**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LOUIS J. GRIPPI,** | ) | **CASE NO. 1:12CV00072** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **CITY OF ASHTABULA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

    This matter comes before the Court on Defendant City of Ashtabula's ("Defendant

Ashtabula") Motion (ECF DKT # 24) for Judgment on the Pleadings.  Defendant Ashtabula

contends that Plaintiff Louis J. Grippi's ("Plaintiff") claims are precluded by *res judicata*.

Defendant Ashtabula's Motion is granted in part and denied in part.

**I.  BACKGROUND**

    The relevant facts and procedural history are as follows.  Plaintiff was hired by the

City of Ashtabula as a laborer and driver for the sanitation department on or about July 10,

2006. (ECF DKT #1, ¶ 11).   On or about December 27, 2008, Plaintiff was injured while on

the job, rendering Plaintiff's ability to perform major life activities substantially impaired.

(ECF DKT #1, ¶ 15).  Beginning on December 27, 2008, Plaintiff worked in "transitional duty" until he was laid off on April 3, 2009, in accordance with the seniority provisions of his collective bargaining agreement. (ECF DKT #1, ¶ 18-19).  On November 16, 2009, Plaintiff was released to return to work, by his physician, without restrictions. (ECF DKT #1, ¶ 20).  Thereafter, Plaintiff attempted to exert his "bumping rights" over less senior employees working in the sanitation department, but was refused to allow to return to work. (ECF DKT #1, ¶ 22).

On May 20, 2010, Plaintiff filed an unfair labor practice action with the Ohio State of Employment Relations Board, against both Ashtabula City Manager Anthony Cantagallo and AFSCME Ohio Council 8, Local #1197 ("the Union"). (ECF DKT #5, Exhibit 1).  Important to note from this action is Plaintiff's expressed concern that if he is not recalled to work within twenty-four months of his initial layoff on April 3, 2011, "[i]n effect he will be permanently terminated by the City as an employee." *Id*.  The action was dismissed by the Board on July 22, 2010. (ECF DKT #5, Exhibit 2).

On November 15, 2010, Plaintiff filed a Complaint against Anthony Cantagallo (hereinafter "Cantagallo") and the Union in the Court of Common Pleas for Ashtabula County, Ohio. (ECF DKT #5, Exhibit 3).  In the Complaint, Plaintiff alleged that Cantagallo wrongfully deprived him of his employment with the city of Ashtabula and the Union misrepresented him when the Union refused to arbitrate Cantagallo's alleged wrongful discharge.  In response, Defendant Cantagallo filed a Motion for Judgment on the Pleadings pursuant to Ohio Civ.R. 12(C), contending that Plaintiff had failed to state a claim under Ohio Civ.R. 12(B)(6).  The Union filed a Motion to Dismiss pursuant to Ohio Civ.R. 12(B)(1) and

Ohio Civ.R. 12(B)(6).  On August 10, 2011, after Plaintiff failed to respond to Defendants'

motions, the State Court granted both motions and issued an Order dismissing the case *with*

*prejudice*. (ECF DKT #5, Exhibit 5).  Plaintiff filed a timely appeal of the state court's

decision, but the Court of Appeals for the Eleventh District upheld the dismissal on December

3, 2012. *Grippi v. Cantagallo*, 2012 WL 5995096, ¶ 15 (Ohio App. 11 Dist. 2012).

On August 15, 2011, Defendant Ashtabula hired two new sanitation department

employees who were both substantially younger than Plaintiff. (ECF DKT #1, ¶ 53).

On January 11, 2012, Plaintiff filed his Complaint with this Court. (ECF DKT #1).  In

response, Defendants Cantagallo and Ashtabula filed their Motion for Judgment on the

Pleadings pursuant to Ohio Civ.R. 12(C). (ECF DKT #24).

## II.  LAW AND ANALYSIS

### Civil Rule 12(c) Standard

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are

closed— but early enough not to delay trial— a party may move for judgment on the

pleadings." Fed. R. Civ. P. 12(c).  When a motion for judgment on the pleadings is filed, "all

well-pleaded material allegations of the pleadings of the opposing party must be taken as true,

and the motion may be granted only if the moving party is nevertheless clearly entitled to

judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008),

quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).  "A

motion brought pursuant to 12(c) is appropriately granted 'when no material issue of fact

exists and the party making the motion is entitled to judgment as a matter of law." *Id*.  To

survive dismissal, the non-moving party "must allege facts that, if accepted as true, are

sufficient 'to raise a right to relief above the speculative level' and must state a claim to relief that is plausible on its face."  *Bell Atlantic v. Twombley*, 550 U.S. 554, 555 (2007).

**Doctrine of Res Judicata**

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  The doctrine of *res judicata* consists of two separate preclusion concepts, issue preclusion and claim preclusion. *Id*. at 77.

Ohio courts have applied the doctrine of *res judicata* when the following four elements were present: (1) there was a prior valid decision on the merits; (2) the second action involved the same parties as the first; (3) the present action raises claims that were or could have been litigated in the prior action; and (4) both actions arise out of the same transaction or occurrence. *Reasoner v. Columbus*, 2005-Ohio-468, ¶ 2 (Ohio Ct.App.2005).

<u>THERE WAS A PRIOR VALID DECISION ON THE MERITS</u>

The first element requires a prior valid decision on the merits.  Plaintiff contends that the state court's dismissal was a procedural adjudication, rather than an adjudication on the merits, thus allegedly barring the application of *res judicata*.

According to Ohio Civ.R. 41(B)(1), "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim."  Further, Ohio Civ.R. 41(B)(3) states that, "a dismissal under division (B) of this rule and any dismissal not provided for in this rule, except as provided in division (B)(4) of this rule, operates as an

adjudication on the merits unless the court, in its order for dismissal, otherwise specifies."

In asserting that the state court's dismissal was procedural in nature, rather than an adjudication on the merits, Plaintiff relies on the rationale set forth in *Ohio ex rel Boggs v. City of Cleveland*, 655 F.3d 516 (6th Cir.2011), where the Sixth Circuit reversed a decision of the district court that had previously dismissed the case on *res judicata* grounds.  However, as Defendant articulates, and this Court agrees, the facts in *Boggs* are not comparable to the facts at hand.  In *Boggs*, the district court dismissed the case for lack of standing, and thus the Sixth Circuit attached no preclusive effect to that decision, because as the court noted, dismissals for lack of standing are "purely procedural." *Id*. at 521.  The facts here are distinguishable because the state court's dismissal with prejudice was not made for lack of standing, does not fall under the exceptions provided for under Ohio Civ.R. 41(B)(4) and makes no specific mention that the adjudication was not on the merits.

Pursuant to the Ohio Civ. R. listed above, the first element of this *res judicata* test, requiring that there have been a prior valid decision on the merits, is satisfied.

THE PRESENT ACTION INVOLVES THE SAME PARTIES AS THE PRIOR ACTION

The second element requires that the present action involve the same parties as the prior action.  Regarding this element, the Defendant must show that the City of Ashtabula was an original party to the Complaint filed in state court.  The Sixth Circuit has stated that "[s]uits against [municipal] officials in their official capacity therefore should be treated as suits against the [municipality]." *Shorts v. Bartholomew*, 255 Fed. App'x. 46, 57 (6th Cir.2007) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Here, Defendant contends that the state court claim should be treated as a claim against the City of Ashtabula, because it was

filed against Defendant Cantagallo in his official capacity as Ashtabula City Manager.

Plaintiff counters by arguing that the second element  is not satisfied because they had never

expressly stated that Defendant Cantagallo was being sued in his official capacity.

"[W]hile it is clearly preferable that plaintiffs explicitly state whether a defendant is

sued in his or her 'individual capacity' . . . failure to do so is not fatal if the course of

proceedings otherwise indicates that the defendant received sufficient notice." *Moore v. City

of Harriman*, 272 F.3d 76, 772 (6th Cir.2001).  The factors a court must look at to determine

whether the defendant had actual knowledge of the potential for individual liability include

the "nature of the plaintiff's claims, requests for compensatory or punitive damages, and the

nature of any defenses raised in response to the complaint, particularly claims of qualified

immunity." *Id*. at 772 n. 1.

The state court Complaint indicates, at more than one location, that Defendant

Cantagallo was sued in his official capacity, despite Plaintiff's lack of express statement.  The

first of these indications appears in the case caption of the Complaint, which includes

Defendant Cantagallo's title of "Ashtabula City Manager" immediately below Defendant

Cantagallo's name. (ECF DKT #5, Exhibit 3).  Following the case caption, Plaintiff refers to

Defendant Cantagallo as "Ashtabula City Manager" in the opening paragraph and additionally

at ¶¶ 2, 7, 9, and the prayer for relief. *Id*.  In paragraph 7, Plaintiff asserts that, "Defendant

Anthony Cantagallo did, as Ashtabula Ohio's City Manager, wrongfully deprive Plaintiff . .

.." (ECF DKT #5, Exhibit 3, ¶ 7).  Perhaps most indicative of Plaintiff's intent to sue

Defendant Cantagallo in his official capacity, and thus the City of Ashtabula, is at paragraph

9, in which the Plaintiff refers to Defendant Cantagallo as, "Defendant Anthony

Cantagallo/City of Ashtabula." (ECF DKT #5, Exhibit 3, ¶ 9).  Further, in the prayer for relief

Plaintiff demands judgment against, "Defendant Anthony Cantagallo, City Manager/City of

Ashtabula." (ECF DKT #5, Exhibit 3).

Given the nature of the Plaintiff's claims and the repeated language utilized in his

state court Complaint, the Court finds that Plaintiff did intend to sue Defendant Cantagallo in

his official capacity as Ashtabula City Manager, thus making the City of Ashtabula an

original party to the state court Complaint.  The second element of the *res judicata* test is

satisfied because the federal court Complaint has been filed against the same parties as the

state court Complaint.

<u>THE PRESENT ACTION RAISES CLAIMS THAT WERE, OR COULD HAVE BEEN,</u>

<u>LITIGATED IN THE PRIOR ACTION</u>

In order to satisfy the third element, the Defendant must show that the present action

raises claims that were, or could have been, litigated in the prior action.  The claims at issue

are in Counts II, III, IV, V, and VI of Plaintiff's Complaint against either Defendant

Ashtabula, Defendant Cantagallo, or both.[1]

*COUNT II*

Count II of Plaintiff's Complaint alleges that Defendant Ashtabula "breached the

provisions of the Collective Bargaining Agreement by failing and refusing to allow Plaintiff

to return to work . . .." (ECF DKT #1, ¶ 35).  According to Plaintiff's Complaint, Defendant

---

[1]     The Court notes that the Counts in Plaintiff's Complaint are misnumbered; there are two Counts

listed as,  "Count III".  (ECF DKT #1, ¶ 38 and ¶ 46).  The Court will refer to the second of those

Counts, at ¶ 46, as "Count IV" and continue with proper numbering thereafter.

-7-

refused to allow Plaintiff to return to work when Plaintiff had attempted to exert his "bumping rights" over less-senior employees. (ECF DKT #1, ¶ 22). This claim was previously litigated in Plaintiff's state court action where Plaintiff alleged the same misconduct against Defendant Cantagallo, which the Court has concluded to have been a suit against him in his official capacity as Ashtabula City Manager. The third element of the *res judicata* test has been satisfied, as this claim has already been litigated and cannot be re-litigated in this Court.

*COUNT III*

Count III of Plaintiff's Complaint alleges that Defendants Ashtabula and Cantagallo violated Plaintiff's right to due process by failing to provide Plaintiff with any notice or hearing prior to his final termination. Moreover, in his Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings, Plaintiff asserts that, "[a]ccording to the allegations of the Complaint, Grippi is still an employee of the City of Ashtabula" and that he "could not have brought his claim at the time he filed his earlier complaint because he did not know at the time that the City of Ashtabula intended to make his layoff permanent." (ECF DKT # 27, p. 5). However, it is clear from the language set forth in Plaintiff's May 2010 unfair labor practice action that Plaintiff was aware that if he were not recalled by April 3, 2011, his right to recall would expire and he would "[i]n effect . . . be permanently terminated by the City as an employee." (ECF DKT #5, Exhibit 1).

While Plaintiff may argue that at the time he filed his state court Complaint in June of 2010, he could not have known whether his layoff would become permanent, he cannot claim he did not have this knowledge at any time prior to the state court's dismissal in August of 2011. By Plaintiff's own admission, he would have known on April 3, 2011, that he had

been, in effect, permanently terminated from his position with the City of Ashtabula and could have sought leave to amend his Complaint to include a claim premised on a violation of his right to due process.

Because there was a four month time span from the expiration of Plaintiff's right to recall and thus, his permanent termination, to the state court's dismissal of his Complaint, the Court finds that Plaintiff's due process claim could have been litigated in the prior action, thus satisfying the third element of the *res judicata* test.

*COUNTS IV & V*

R.C. § 4112 contains three separate statutory provisions—§ 4112.02, § 4112.14, and § 4112.99—to bring causes of action for age discrimination.  While R.C. §§ 4112.02 and 4112.14 are specific provisions, R.C. § 4112.99 is considered a general provision which states, "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."  Count IV of Plaintiff's Complaint alleges age discrimination pursuant to R.C. § 4112.99. (ECF DKT #1 ¶ 56).  Because R.C. § 4112.99 does not contain any substantive information, i.e. statute of limitations, this Court has held that R.C. § 4112.99 "uses the substantive characteristics of the provision upon which the action is ultimately premised."  *Reminder v. Roadway Express, Inc.*, 2006 WL 51129, *3 (N.D. Ohio 2006).

Further, R.C. § 4112 stipulates that when a claimant brings a cause of action for age discrimination under R.C. § 4112.02, the claimant is barred from also bringing a R.C. § 4112.14 cause of action.  Here, the age discrimination claim brought pursuant to R.C. § 4112.99 is premised on R.C. § 4112.14 because Plaintiff's second age discrimination claim, in

-9-

Count V, is brought under R.C. § 4112.14.  The R.C. § 4112.99 claim in Count IV could not

be premised on R.C. § 4112.02 given the mutual exclusivity between R.C. §§ 4112.02 and

4112.14.  The argument that Plaintiff's R.C. § 4112.99 claim is premised upon § 4112.02 is a

violation of R.C. § 4112's mutual exclusivity provision.  Accordingly, the analysis below

applies to both Count IV and Count V.

Count V of Plaintiff's Complaint alleges age discrimination against Defendant

Ashtabula in violation of R.C. § 4112.14.  Plaintiff contends that Defendant Ashtabula's

hiring of two new and substantially younger sanitation department employees on August 15,

2011, forms the factual basis for his age discrimination cause of action. (ECF DKT #1, ¶ 53

and ECF DKT #27, p. 5).  Plaintiff further contends that because his state court action had

been dismissed five days earlier on August 10, 2011, there was no possible way he could have

brought the age discrimination claim in the prior suit, because the factual basis for the claim

occurred after dismissal.  *Id*.

Conversely, Defendant contends that Ashtabula's hiring of two new and younger

employees represents only evidence of the alleged discrimination and cannot form the basis of

the discrimination cause of action. (ECF DKT #28, p. 5-6).  Defendant further contends that

the actual alleged discriminatory act that Plaintiff complains of is the July 5, 2011 denial of

Plaintiff's grievance, which occurred over one month before Plaintiff's state court case had

been dismissed.  Therefore, Defendant argues, Plaintiff could have sought leave to amend his

Complaint to include a charge of age discrimination. *Id*. at 5.

The statute of limitations period for an age discrimination claim brought pursuant to

R.C. § 4112 begins to run on the date of the "final discriminatory act." *Oker v. Ameritech*

*Corp.*, 89 Ohio St.3d 223, 729 N.E.2d 1177 (Ohio 2000).  In *Oker*, an attorney was notified

by his employer that their legal department was being restructured and that all legal

department employees must re-submit their resumes for hiring purposes. *Id*. at 1178.  The

attorney was informed in November 1994 that although his application to join the restructured

department had been rejected, he could remain at the company in his position until January

1995. *Id*.  After termination in January 1995, the employee remained at the company for an

additional four months, working in a non-managerial capacity in the customer service

department, during which time the company hired a younger attorney to the legal department.

*Id*.  Following the employee's age discrimination lawsuit, the employer argued that the statute

of limitations period had expired because the date the action accrued was in November 1994,

when they notified the employee that he would not be re-hired. *Id*.  In determining that the

statute of limitations period for the employee's age discrimination action began to run after

the employee's final termination in January 1995, the Ohio Supreme Court reasoned that this

event represented the "final discriminatory act." *Id*. at 1180.

While Defendant is correct in arguing that the July 5, 2011 denial of his grievance is

the final discriminatory act for purposes of beginning the statute of limitations, the question

before the Court is whether the claim could have been litigated in the prior action, not

whether the claim had accrued.  Although accrual date is certainly an aspect of this analysis, it

is not the only factor for the Court to consider.  Under R.C. § 4112, a party asserting a claim

for age discrimination must allege the following elements: (1) they were a member of a

protected class; (2) they were discharged; (3) they were qualified for the position; and (4)

they were replaced by someone substantially younger. *Coryell v. Bank One Trust Co. N.A.*,

2004 -Ohio- 723 at ¶ 20.

Although Plaintiff's claim for age discrimination had accrued, Plaintiff could not have sufficiently alleged a claim for age discrimination because the event satisfying the final element— that Plaintiff was replaced by an employee substantially younger—had not yet occurred.  Any attempt by the Plaintiff to amend his state court Complaint to include a claim for age discrimination would have been futile before the August 15, 2011 hiring of two new and substantially younger employees by Defendant Ashtabula.

Interpreting the facts in a light most favorable to Plaintiff, the Court finds that the claim for age discrimination pursuant to R.C. § 4112.14 could not have been litigated in the prior action because Plaintiff did not have, and could not have had, all the facts necessary to establish a prima facie case of age discrimination.  The claims for age discrimination in Counts IV and V of Plaintiff's Complaint are not barred from future litigation by the doctrine of *res judicata* and survive Defendant's Motion for Judgment on the Pleadings.

Defendants claim that Plaintiff's proposal of the August 15, 2011 accrual date is merely an attempt to circumvent the proscribed 180-day statute of limitations pursuant to R.C. § 4112.02(N).  Although the language of R.C.§ 4112.14 does not specify the length of the statutes of limitations, the Sixth Circuit determined that a six year statutory time period is applicable. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001).  As the expiration of the six year statute of limitations is not at issue, this Court may continue in its analysis.

*COUNT VI*

Count VI of Plaintiff's Complaint asserts a claim of disability discrimination pursuant to R.C. §  4112.99.  However, Plaintiff's Complaint and Plaintiff's Memorandum in Opposition are devoid of any supporting factual allegations to support this claim, merely concluding that, "[t]he defendants discriminated against Plaintiff on account of his disability, record of being disabled, and/or perceived disability." (ECF DKT # 1, ¶ 60).  But Defendant failed to assert dismissal of this claim based on a failure to state sufficient factual allegations under Federal Rule of Civil Procedure 8(a)(2).  Construing the facts in the light most favorable to the Plaintiff, the Court cannot undergo a *res judicata* analysis to determine whether the disability discrimination claim was litigated, or could have been litigated, in the prior action.  Accordingly, Plaintiff's claim for disability discrimination in Count VI is not barred by applying *res judicata* and survives this Motion for Judgment on the Pleadings.

BOTH ACTIONS ARISE OUT OF THE SAME TRANSACTION OR OCCURRENCE

The final element of the *res judicata* test requires that both actions arise out of the same transaction or occurrence, which has been defined as a "common nucleus of operative facts." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226, 229 (Ohio 1995).  Remaining at issue is whether Plaintiff's claims against Defendants Ashtabula and Cantagallo in Counts II and III arise out of a common nucleus of operative facts with Plaintiff's state court claim of wrongful deprivation of employment.

Plaintiff's state court Complaint alleges that "[o]n November 16, 2009, Defendant Cantagallo did, as Ashtabula, Ohio's City Manager, wrongfully deprive Plaintiff Grippi of his employment . . .." (ECF DKT #5, Exhibit 3, ¶ 7).  To restate, November 16, 2009, was the

date Plaintiff was not allowed to return to work after attempting to exert his bumping rights over less-senior employees.  Counts II and III of Plaintiff's Complaint in this Court allege that Defendants breached the provisions of the collective bargaining agreement by failing to allow Plaintiff to return to work and violated Plaintiff's right to due process by terminating his employment without notice or a hearing on April 3, 2011.

Although some of the dates here are not exact matches, the question before this Court is whether there is a common nucleus of operative facts between the two actions.  The claims in both actions, despite the exact dates of the alleged violations, all share a common nucleus of operative facts because they are events arising from Plaintiff's original April 3, 2009 layoff and Defendant's refusal to allow Plaintiff to return to work.  The fourth element of the *res judicata* test is satisfied for the claims in Counts II and III.

### III.  CONCLUSION

For these reasons, Defendant's Motion for Judgment on the Pleadings is granted in part and denied in part. The Court dismisses Counts II and III from Plaintiff's Complaint. Defendant's Motion is denied for Counts IV, V, and VI.

**IT IS SO ORDERED.**

> **s/ Christopher A. Boyko**
> **CHRISTOPHER A. BOYKO**
> **United States District Judge**

**Dated: November 4, 2013**